IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| ROBERT EUGENE HYBERTSON, et al., | ) | |
| | ) | Case No. 5:15-cv-5040 |
| Plaintiffs, | ) | |
| | ) | **BRIEF IN SUPPORT OF** |
| v. | ) | **DEFENDANTS' MOTION TO** |
| | ) | **DISMISS THE COMPLAINT** |
| UNITED STATES OF AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Robert Eugene Hybertson filed a *pro se* complaint against the United States, the

Department of Treasury, the Internal Revenue Service, and IRS Criminal Investigation Agent

Greg M. Flynn. (Docket No. 1, "Compl.") Additional individuals have purported to join as *pro se*

plaintiffs in Hybertson's complaint. At base, they claim that they are not subject to the internal

revenue laws and that their income is not subject to taxation. They seek a declaratory judgment

that would, on its face, ratify their long-debunked tax defier theories – but would, in actuality,

enjoin the United States' efforts to assess and collect their federal taxes.

But all of their purported claims are frivolous, *e.g.*, *Crain v. Comm'r*, 737 F.2d 1417 (5th

Cir. 1984); *Wnuck v. Comm'r*, 136 T.C. 498 (2011), and all claims should be dismissed under

Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, *e.g., United States v. Buckner*, 830

F.2d 102, 103 (7th Cir. 1987) ("tax protest" arguments including that "wages are not income and

therefore are not subject to federal income tax laws" are "tired arguments" which "amount to an

obdurate refusal to acknowledge the law" and are "sanction-bait" in civil litigation"), *overruled*

*on other grounds by Cheek v. United States*, 498 U.S. 192, 203 (1991); *United States v. Studley*,

783 F.2d 934, 937 n.3 (9th Cir. 1986) (noting that the taxpayer's argument that she was not a

person subject to the Internal Revenue Code "has been consistently and thoroughly rejected by every branch of the government for decades [and] . . . such utterly meritless arguments [are] now the basis for serious sanctions imposed on civil litigants who raise them"). Further, all claims against Agent Flynn should be dismissed for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

## I.   Procedural Posture

Hybertson filed and signed, *pro se*, the complaint that initiated this case. (Docket No. 1.) In it, Hybertson purports to make claims on his own behalf and on behalf of at least four additional individuals. Two of those four of those individuals, plus several additional persons, have filed documents that purport to "join" Hybertson's complaint. As this Court has already noted, "although each plaintiff is entitled to represent himself in this action, no plaintiff is permitted to prosecute the claims of another plaintiff." (Docket No. 18 at 4 (citing, throughout, 28 U.S.C. § 1654; *Jones ex rel. Jones v. Corr. Med. Servs., Inc.*, 401 F.3d 950, 952 (8th Cir. 2005); *Crump-Donahue v. U.S. Dep't of Agric.*, No. 407-CV-00511-WRW, 2007 U.S. Dist. LEXIS 42299, at *4 (E.D. Ark. Jun. 11, 2007) ("When a non-lawyer attempts to represent the interests of other persons, the practice constitutes the unauthorized practice of law and results in a nullity."); *Gross v. United States*, No. Civ. 06-4211, 2009 U.S. Dist. LEXIS 12283, at *2-3 (D.S.D. Feb. 13, 2009)).)

The following analysis of the docket in this case identifies which documents have been filed with this Court regarding which purported plaintiff to date; which claims the United States will construe as having been filed by each plaintiff individually, and which claims are "a nullity" due to the *pro se* practice rules.

## A.    Robert Eugene Hybertson.

Hybertson filed the complaint, which purports to state claims under the Fourth and Fifth Amendments to the United States Constitution, due process provisions of the Constitution, and Administrative Procedure Act ("APA"), 5 U.S.C. § 702. (*E.g.*, Compl. ¶ 1.8.) Hybertson also filed a document called "Plaintiff's First Mandatory Notice and Offer of Proof," which is comprised of 357 pages (Docket No. 3) and which he purports to incorporate by reference into the complaint (Compl. ¶ 1.2). As an initial matter, "[a] pleading incorporating allegations from other documents must clarify which statements are to be incorporated. *Shelter Mut. Ins. Co. v. Public Water Supply Dist. No. 7*, 747 F.2d 1195, 1198 (8th Cir. 1984); *see also* Fed. R. Civ. P. 8(a) (requiring a "pleading that states a claim for relief" to contain "a short and plain statement of the claim showing that the pleader is entitled to relief"; Fed. R. Civ. P. 8(d)(1) ("[e]ach allegation must be simple, concise, and direct"); *Feldkamp v. Long Bay Partners, LLC*, 773 F. Supp. 2d 1273, 1287 (M.D. Fla. 2011) (allegations failed to comply with Fed. R. Civ. P. 8 when they were "verbose and confusing," engaged in "extended argument," and when the court could not "decipher facts which support[ed]" them). To the extent that Docket No. 3 is decipherable as to which portion is applicable to a particular claim in the complaint however, we will include Docket No. 3 in our analysis of why the complaint should be dismissed.

Hybertson generally complains that the internal revenue laws do not apply to him and that he is "being threatened" by the Criminal Investigation Division of the IRS. (*See generally* Compl.; Docket No. 3-3 at 4.) With respect to the purported "threats," Hybertson claims that "[h]e has recently received threatening correspondence from [Agent Flynn] which alludes to criminal prosecution" and "an associate of [Hybertson's] was contacted in person and was quizzed for facts relative to [Hybertson] and his affairs." (Compl. ¶ 2.1.) In Docket No. 3-3, Hybertson includes a letter from Agent Flynn noting that there is an "ongoing IRS Criminal

Investigation into [Hybertson's] failure to file income tax returns, and failure to report income from [his] rig heater business, and various other activities." (Docket No. 3-3 at 8.) According to Hybertson, this letter "contain[s] threats [of] malicious prosecution and false imprisonment." (*Id.* at 7.) Hybertson acknowledges that Agent Flynn is employed by the United States as a Special Agent of the Criminal Investigation Division of the IRS. (*See* Compl. ¶ 2.7; *see also* Docket No. 3-3 at 8-9.) Hybertson offers no additional facts or allegations regarding Agent Flynn. No other purported plaintiff offers any other fact or allegation regarding Agent Flynn.

Hybertson seeks a declaration that certain Treasury regulations and/or actions by the IRS violate the APA and/or his due process rights (Compl. ¶¶ 3.7 (Count One), 3.13 (Count Two), 3.16 (Count Three), 3.20 (Count Five) 3.26 (Count Six), 3.33 (Count Eight)); a declaration interpreting the law (*id.* ¶¶ 3.18 (Count Four)); a declaration that certain Internal Revenue laws do not apply to him (*id.* ¶¶ 3.18 (Count Four)); a declaration that the United States' "refusal or failure to provide an interpretation" of certain legal citations is "a violation of the void for vagueness doctrine and [his] due process rights" (*id.* ¶ 3.29 (Count Seven)); and a declaration that Hybertson "did not act willfully" for purposes of criminal tax provisions (*id.* ¶ 3.33 (Count Eight)).

### B. Christopher Rhodes Chapman.

According to the complaint, Christopher Rhodes Chapman appeared before a grand jury in January 2007 "for suspicion of violations of 26 USC [*sic*]." (Compl. ¶ 2.2.) Further, Chapman "served the grand jury and the Department of Justice's counsel with a complaint to Congress filed Dec. 28, 2005 which contained a briefing of certain conclusions relating to *in personam* jurisdiction under 26 USC [*sic*] in relation to citizens of the United States." (*Id.*) But Chapman "never heard back from either the grand jury or the Dept. of Justice since." (*Id.*)

The complaint also purports to incorporate by reference a portion of Docket No. 3 which relates to Chapman and purports to be signed by Chapman. (*Id.* ¶ 1.2.) In it, Chapman complains that IRS personnel (but not Agent Flynn) have contacted and "harass[ed]" him and his "friends and associates" and have sent him one or more summonses. (Docket No. 3-4 ¶ 2.1.) Further, Chapman alleges that IRS personnel have "taken property from [him] to pay a [tax] imposed solely through regulation" by levy. (*Id.* ¶ 3.4.)

Chapman also filed a document called "Plaintiff Chris Chapman's affidavit of gross income receipts during years 1999 through 2014. Mandatory Judicial Notice and Offer of Proof." (Docket No. 9.) Docket No. 9 appears intended to contest statements in recent correspondence from the IRS to Chapman regarding his outstanding federal tax liabilities for tax years 1999, 2000, 2001, 2002, 2003, and 2004. (Docket No. 9 ¶¶ 1.1, 3.1; Docket No. 9-1.)

Chapman signed and filed a document called "Affirmation of Co-Plaintiff Status" in which he affirms that he wants to be a plaintiff in this case and states, "with this affidavit I intend to provide my signature for the record as a Plaintiff to said action." (Docket No. 7.) Therefore, he is requesting the same declaratory relief that Hybertson requests in the complaint. (*See generally id.* and Docket No. 9 (containing Chapman's "rationale" for why certain internal revenue laws are invalid).) Chapman's claims made on his own behalf will be addressed below.

### C.     Robert Orth.

According to the complaint, Robert Orth "has recently received correspondence from the [IRS] who has not considered all relevant statutes in its conclusion that he allegedly owes sums imposed under 26 USC [*sic*], and has threatened Mr. Orth with criminal charges." (Compl. ¶ 2.3.) The complaint also purports to incorporate by reference a portion of Docket No. 3 which relates to Orth and purports to be made under Orth's signature. (Compl. ¶ 1.2.) In Docket No. 3-

5, Orth complains that the internal revenue laws do not apply to him and of having received a notice of overdue taxes for 2005 and 2006.

Orth signed and filed a document called "Affirmation of Co-Plaintiff Status" in which he affirms that he wants to be a plaintiff in this case and states, "with this affidavit I intend to provide my signature for the record as a Plaintiff to said action." (Docket No. 8.) Therefore, he is requesting the same declaratory relief that Hybertson requests in the complaint. (*See generally id.*) Orth's claims made on his own behalf will be addressed below.

### D.      Charles Sorenson.

According to the complaint, Charles Sorenson "is an employee for a large corporation but risks his employment at any time if he were to enquire as to how his employer's payroll department interprets and applies the provisions of 26 USC." (Compl. ¶ 2.4.) The complaint also purports to incorporate by reference a portion of Docket No. 3 which relates to Sorenson. (*Id.* ¶ 1.2.) There are no other allegations regarding facts relating to Sorenson in the complaint. (*See generally* Compl.) Sorenson has not personally filed a document in this case and has stated no claim on his own behalf. (*See* Docket.) Accordingly, any claims purportedly brought on behalf of Sorenson are "a nullity" and will not be addressed further. (Docket No. 18 at 4.)

### E.      Timothy Taylor.

According to the complaint, "[o]n or about August 14, 2014 Mr. Taylor's bank account was drained by the [IRS] without prior notice or protocol required to predicate a levy." (Compl. ¶ 2.5.) This is the predicate for the "Fifth Cause of Action" in the complaint that Hybertson filed. (*Id.* ¶¶ 3.19 to 3.20.) There are no other allegations regarding facts relating to Taylor in any other documents filed in this case. (*See generally* Docket.) Taylor has not personally filed a document in this case and has stated no claim on his own behalf. (*See* Docket.) Accordingly, any claims

purportedly brought on behalf of Taylor are "a nullity" and will not be addressed further. (Docket No. 18 at 4.)

### F. All remaining purported Plaintiffs.

Numerous additional individuals have purported to join this case as plaintiffs. Each of them has filed a document entitled "Affidavit of Joinder." (Docket Nos. 12-13, 15-17, 20.[1]) In these documents, each purported plaintiff claims to "join [the case] as a similarly party [*sic*] in interest." (*Id.*) They state, "I have read the complaint and find myself identically situated in that I, too, have been forced or otherwise coerced into paying the Defendant(s) sums relative to the provisions of 26 USC [*sic*] upon which this civil action focuses." (*Id.*) Each purported additional plaintiff states his "desire for the same review and relief sought by the original Plaintiffs to this action." (*Id.*) There are no other allegations regarding facts relating to any of these purported plaintiffs in the complaint that Hybertson filed or in any other document filed in this case to date. (*See generally* Docket.) These purported additional plaintiffs' claims, made on behalf of themselves individually, will be addressed below.

## II. All claims should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

This Court lacks subject matter jurisdiction over the claims in this case, and all claims should be dismissed under Fed. R. Civ. P. 12(b)(1). The only relief that Hybertson or any purported plaintiff explicitly seeks is declaratory relief: a declaration that certain Treasury regulations and/or actions by the IRS violate the APA and/or his due process rights (Compl.

---

[1] Docket No. 20 contains the so-called affidavit of two purported additional plaintiffs: Robert E. Butler and Carrie J. Butler. Aside from using collective pronouns instead of individual pronouns, the language in the Butlers' "affidavit" is the same as the language in the individual affidavits which is set forth herein.

¶¶ 3.7 (Count One), 3.13 (Count Two), 3.16 (Count Three), 3.20 (Count Five) 3.26 (Count Six), 3.33 (Count Eight)); a declaration interpreting the law (*id.* ¶¶ 3.18 (Count Four)); a declaration that certain Internal Revenue laws do not apply to him (*id.* ¶¶ 3.18 (Count Four)); a declaration that the United States' "refusal or failure to provide an interpretation" of certain legal citations is "a violation of the void for vagueness doctrine and [his] due process rights" (*id.* ¶ 3.29 (Count Seven)); and a declaration that Hybertson "did not act willfully" for purposes of criminal tax provisions (*id.* ¶ 3.33 (Count Eight)).

These requests for declaratory relief are merely a ruse to disguise all purported plaintiffs' real purpose: to stop the efforts of the IRS to enforce the internal revenue laws of the United States and collect taxes owed. Accordingly, as an initial matter, Agent Flynn, the Department of Treasury, and the IRS should be dismissed as parties because "[t]he general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (quotations omitted); *Coleman v. Espy*, 986 F.2d 1184, 1189 (8th Cir. 1993). If the requested declaration or injunction were entered, the *United States* would be compelled to act or refrain from acting, not any other purported party. Thus, this action is maintainable, if at all, only against the United States. "If the relief sought against a federal officer in fact operates against the sovereign, then the action must be deemed as one against the sovereign." *State of New Mexico v. Regan*, 745 F.2d 1318, 1320 (10th Cir. 1984).

To establish subject matter jurisdiction for purposes of Fed. R. Civ. P. 12(b)(1), a plaintiff must identify, among other things, 1) "a statute that confers subject matter jurisdiction on the district court" and 2) "a federal law that waives the sovereign immunity of the United

States to the cause of action." *Macklin v. United States*, 300 F.3d 814, 819 (7th Cir. 2002); *see also Manypenny v. United States*, 948 F.2d 1057, 1063 (8th Cir. 1991). Further, any plaintiff invoking federal court jurisdiction bears the burden of proof to establish that he has Article III standing before a federal court has subject matter jurisdiction to hear his claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In a facial challenge to the subject matter jurisdiction over a complaint, the court must accept all factual allegations that go to subject matter jurisdiction as true, and resolve all reasonable inferences in favor of the plaintiff. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). All claims made in this case fail these subject matter jurisdictional requirements and are barred.

A.   **No purported plaintiff has identified a federal statute that confers subject matter jurisdiction on this Court.**

Before a federal district court may entertain a suit against the United States, a plaintiff must identify "a statute that confers subject matter jurisdiction on the district court." *Macklin*, 300 F.3d at 819; *accord United States v. Dalm*, 494 U.S. 596, 608-10 (1990) (the "rules of jurisdiction" require that federal courts remain within "the authority Congress has given [them] in permitting suits against the Government"). Hybertson does not identify a statute that provides this Court subject matter jurisdiction in this case. The APA does not provide an independent or sufficient basis for subject matter jurisdiction for Hybertson's claims. *See Califano v. Sanders*, 430 U.S. 99, 107 (1977) ("the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action"). None of the documents filed in this case by any other purported plaintiff identify a statute that provides this Court subject matter jurisdiction over any purported claim in this case. Therefore, all claims should be dismissed.

**B. No purported plaintiff has identified a valid waiver of the sovereign immunity of the United States for his claim.**

Before a federal district court may entertain a suit against the United States, a plaintiff must also identify "a federal law that waives the sovereign immunity of the United States to the cause of action." *Macklin*, 300 F.3d at 819; *see also United States v. Mitchell*, 445 U.S. 535, 538 (1980) (a plaintiff must "look beyond the jurisdictional statute for a waiver of sovereign immunity"). It is well established (1) that the United States, as sovereign, cannot be sued without its consent; (2) that the terms of its consent define a court's jurisdiction; (3) that waivers of sovereign immunity must be unequivocally expressed and are strictly construed in favor of the Government; and (4) that, if a plaintiff cannot fit a claim against the United States within a waiver of sovereign immunity, the court lacks jurisdiction and must dismiss the action.[2] *United States v. Dalm*, 494 U.S. 596, 608 (1990); *Mitchell*, 445 U.S. at 538 (1980); *accord Lane v. Pena*, 518 U.S. 187, 192 (1996); *Manypenny*, 948 F.2d at 1063. The United States may attach such conditions to the waiver of sovereign immunity as it deems proper, and in order to institute

---

[2] The doctrine of sovereign immunity protects federal employees sued in their official capacities. *See Coleman*, 986 F.2d at 1189 ("[s]overeign immunity bars claims against federal officials in their official capacity unless a waiver is unequivocally expressed by Congress"); *Atkinson v. O'Neill*, 867 F.2d 589, 590 (8th Cir. 1989) ("It is well settled that the United States and its employees, sued in their official capacities, are immune from suit, unless sovereign immunity has been waived."). Agent Flynn's alleged actions in furtherance of his investigation into Hybertson's failure to file income tax returns and report income, among other things, are the very essence of his work in his official capacity at the IRS to administer the internal revenue laws. *See generally Comyns v. United States*, 155 F. Supp. 2d 1344 (S.D. Fla. 2001) (describing and analyzing the activities of IRS CID agents in a disclosure case under 26 U.S.C. § 6103). Thus, even if Agent Flynn were a proper party (which he is not), the principles of sovereign immunity described herein, which bar all claims against the United States, bar the claims against him as well.

a suit against the United States, there must be strict compliance with all those conditions. *United States v. Sherwood*, 312 U.S. 584, 586-87 (1941); *accord Lane*, 518 U.S. at 192.

In this case, the relief requested in the complaint is for a declaratory judgment with respect to federal taxes. The APA contains a waiver of the sovereign immunity of the United States for declaratory judgments: 1) generally, in cases involving constitutional challenges and other claims arising under federal law, and 2) specifically, in cases brought pursuant to the APA by a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702; *Michigan v. United States Army Corps of Eng'rs*, 667 F.3d 765, 774-75 (7th Cir. 2011). See also, regarding the latter waiver of sovereign immunity, § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."). The APA expressly provides, however, that its waiver of sovereign immunity is limited by restrictions imposed by other statutes. §§ 702(1)-(2) ("Nothing herein . . . affects other limitations on judicial review" or "confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."). The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, and the Anti-Injunction Act ("AIA"), 26 U.S.C. § 7421(a) are two such restrictions that limit the APA's waiver of sovereign immunity.

Both the DJA and the AIA forbid the relief sought here: to enjoin the United States from assessing or collecting federal tax. *Porter v. Fox*, 99 F.3d 271, 274 (8th Cir. 1996) (the DJA, like the AIA, expressly "forbids suits for the purpose of restraining the assessment or collection of any tax"); *Harrell v. United States*, 13 F.3d 232, 235 (7th Cir. 1993); *accord Alexander v. "americans United", Inc.*, 416 U.S. 752, 759 n.10 (1974) (The scope of the "federal tax exception to the Declaratory Judgment Act is at least as broad as the prohibition of the Anti-

Injunction Act."). Both the AIA and the DJA also prohibit any suit challenging activities which are intended to or may result in the assessment or collection of taxes, including criminal tax investigations. *Judicial Watch v. Rossotti*, 317 F.3d 401, 405 (4th Cir. 2003); *Daulton v. United States*, 76 Fed. Appx. 652, 653-54 (6th Cir. 2003) (affirming district court's dismissal, under the AIA, of suit seeking injunction against criminal investigation); *Koin v. Coyle*, 402 F.2d 468, 469 (7th Cir. 1968) ("True, the suit does not directly and expressly aim at the assessment. But it is directed expressly at the means to that end, and in our view is substantially aimed at restraining the assessment. It cannot be seriously contended that precluding the assessment is not the end sought."); *Sterner v. United States DEA*, 467 F. Supp. 2d 1017, 1028 (S.D. Cal. 2006) (granting motion to dismiss a suit for injunction against an IRS Special Agent's criminal investigation under the Anti-Injunction Act). This is because the AIA's principal purpose is "the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund.'" *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736-37 (1974) (quoting *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962)). *Accord Tollerson v. Comm'r*, No. CIV. A. H-91-2762, 1993 U.S. Dist. LEXIS 3310, at *19 (S.D. Tex. Mar. 4, 1993) ("courts are without jurisdiction to enjoin IRS investigations or 'harassment' that occurs in the course thereof"); *Abraham v. United States*, No. CIV.A. 97- 1873 CKK, 1998 U.S. Dist. LEXIS 6451, at *9-10 (D.D.C. Mar. 31, 1998) (collecting cases).

The only *facts* alleged by any purported plaintiff address actions taken by the IRS to assess or collect taxes and actions taken by Agent Flynn to conduct a criminal investigation into Hybertson's tax matters. If Hybertson, or any purported plaintiff, wishes to have judicial review of his assessed or collected federal taxes, he may follow the highly articulated and exclusive

structure of federal tax litigation for such issues. *E.g.*, 26 U.S.C. §§ 6213(a), 7442 (authorizing a taxpayer to bring actions in the Tax Court to obtain review of asserted deficiencies in income, gift, estate and certain excise taxes without first having to pay the amount in dispute); 26 U.S.C. §§ 6532(a)(1), 7422(a), 28 U.S.C. §§ 1346(a)(1), 1491 (authorizing a taxpayer to file a suit for refund of his taxes in a federal district court or in the Court of Federal Claims); 26 U.S.C. § 7433(a), 28 U.S.C. §§ 1346(a)(1) (authorizing a taxpayer to sue for damages incurred from unauthorized collections activity taken by an employee of the IRS in a federal district court). *C.f. South Carolina v. Regan*, 465 U.S. 367, 380 (1984) (AIA did not bar a state without recourse to such statutory relief to challenge constitutionality of tax). Neither Hybertson nor any purported plaintiff has invoked any of these statutes. They have not pled facts sufficient to establish these statutes' application.

The remaining content of the complaint regurgitates long-debunked arguments challenging the IRS's authority to assess and collect tax. But again, neither Hybertson nor any other purported plaintiff offers any *fact* to suggest that any limited exception to the Anti-Injunction Act is applicable here. *C.f. South Carolina*, 465 U.S. at 380-81; *Enochs*, 370 U.S. at 6-8 (To qualify for the judicially-created exception to the AIA's prohibition, the plaintiff must establish that: (1) under no circumstances could the government prevail, and (2) equity jurisdiction otherwise exists.); *Cohen v. United States*, 650 F.3d 717, 727 (D.C. Cir. 2011) (suit challenging procedure for taxpayers to seek an excise tax refund, after tax had been assessed and collected, was not barred by the AIA); *Z St., Inc. v. Koskinen*, 44 F. Supp. 3d 48, 68 (D.D.C. 2014) (lawsuit challenging "the constitutionality of the process that the IRS allegedly employs when it determines the tax-exempt status of certain organizations" not barred by the AIA), *aff'd* No. 15-5010, 2015 U.S. App. LEXIS 10326 (Jun. 19. 2015).

Accordingly, because Hybertson and all purported additional plaintiffs are actually attempting to "restrain[] the assessment and collection of [federal] tax," *see* § 7421(a), the DJA and the AIA bar all claims in this case. The United States has not waived sovereign immunity for such claims. *See Judicial Watch*, 317 F.3d at 405; *Beck v. McKinney*, 16 Fed. Appx. 482, 483-84 (7th Cir. 2001) (noting that the courts have repeatedly rejected, and that the Anti-Injunction Act bars, plaintiff's claims that he is not subject to tax); *Sterner*, 467 F. Supp. 2d at 1028. All claims in this case should be dismissed.

### C. No purported plaintiff has established that he has Article III standing to sue on any purported claim.

If any purported plaintiff were to argue that he is *not* suing to restrain the assessment or collection of any tax, the absence of federal subject matter jurisdiction would still require that his claims be dismissed. *Worsham v. United States Dep't of the Treasury*, 2013 U.S. Dist. LEXIS 132644, at * 24 (D. Md. Sept. 17, 2013) ("In his quest to avoid the Charybdis-like pull of the Anti-Injunction Act, Worsham wrecks his claims against the unyielding Scylla of Article III's case-or-controversy requirement."). Article III of the United States Constitution requires that the federal judiciary resolve only "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. For more than 200 years, the federal judiciary has limited its exercise of power "solely, to decide on the rights of individuals," *Marbury v. Madison*, 5 U.S. 137, 170 (1803), and therefore has refrained from reviewing the constitutionality of statutes except when the resolution of some actual injury requires that the Court adjudicate the constitutionality of a challenged act. *See Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 598 (2007) (plurality opinion) ("The federal courts are not empowered to seek out and strike down any governmental act that they deem to be repugnant to the Constitution.").

The party invoking federal court jurisdiction bears the burden of proving each element of Article III standing. *Lujan*, 504 U.S. at 561. To do so, a plaintiff must allege facts sufficient to show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv*, 528 U.S. 167, 180-81 (2000); *Bell v. Keating*, 697 F.3d 445, 451 (7th Cir. 2012). Federal courts "have no power per se to review and annul acts of Congress on the ground that they are [purportedly] unconstitutional." *Frothingham v. Mellon*, 262 U.S. 447, 488 (1923), decided with *Massachusetts v. Mellon*; *see also Lujan*, 504 U.S. at 573-74. By refusing to entertain generalized grievances, federal courts "respect[ ] the proper—and properly limited—role of the courts in a democratic society." *Hollingsworth v. Perry*, — U.S. —, 133 S. Ct. 2652, 2667 (2013) (quotation omitted). "[A]t an irreducible minimum, Article III [of the Constitution] requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (quotation omitted).

While Hybertson and all purported plaintiffs appear to disagree with certain tax laws of the United States, their allegations do not suggest that any one plaintiff has suffered an "injury in fact." The vast majority of ink spilled in this matter goes to identifying tax laws and implementing regulations and reciting faux legal arguments as to why they are unconstitutional, wrongful, or otherwise offensive to Hybertson and the remaining purported plaintiffs. Such frivolous and generalized objections to sound laws and regulations, *Buckner*, 830 F.2d at 103;

*Studley*, 783 F.2d at 937 n.3; *Crain*, 737 F.2d 1417; *Wnuck*, 136 T.C. 498, fail to establish that Hybertson or any purported plaintiff has sustained a cognizable legal injury to support Article III standing for any claim.

Moreover, to the extent that Hybertson (or any other purported plaintiff) attempts to make a claim for a specific action taken by any Defendant to assess or collect his federal tax or to engage in a criminal tax investigation, he fails to allege any *fact* to suggest that such action was *wrongful* such that it caused him a cognizable legal injury. *E.g.*, *Blair v. U.S. Treasury Dept.*, 596 F. Supp. 273, 281 (D. Ind. 1984) (Actions such as "[p]hone calls, letters, meetings, seizures and levies . . . . without any allegations that they were done outside the scope of usual procedure, are perfectly valid activities of IRS officials involved in the performance of their official duties."). For the reasons stated in *Blair*, the purported plaintiffs here lack standing:

> Nothing in the [*Blair*] complaint indicates that these activities were done in any way other than in strict compliance with the Code and IRS regulations. Despite the notice pleading requirements of the Federal Rules of Civil Procedure, and the liberal pleading requirements for *pro se* litigants under *Haines v. Kerner*, this complaint simply fails to state a set of facts which would entitle the plaintiffs to relief. This court will not fancifully speculate on what defendants may or may not have done; *if the plaintiffs cannot specify the defendants' wrongful conduct, then the court will not take cognizance of their claims.*

*Id.* (dismissing complaint for failure to state a claim for which relief can be granted) (emphasis added).

Because no plaintiff has established that he has suffered a cognizable legal injury (much less one that is concrete and particularized and actual or imminent, rather than conjectural or hypothetical) no plaintiff has alleged facts sufficient to infer 1) that any purported "injury" is fairly traceable to an action taken by the United States or 2) that it is likely, as opposed to merely speculative, that his purported "injury" is redressable by a decision in his favor. *See Friends of*

*the Earth*, 528 U.S. at 180-81; *Bell*, 697 F.3d at 451. Therefore, no purported plaintiff has Article III standing to sue upon any claim.

For the same reasons, Hybertson and every other purported plaintiff lack standing to challenge any purported agency action under the specific waiver of sovereign immunity in the APA. To have such standing, a plaintiff must show that he is either "suffering a legal wrong because of agency action" or "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. "[T]o be adversely affected or aggrieved within the meaning of a statute, the plaintiff must establish that the injury he complains of (*his* aggrievement, or the adverse effect upon *him*) falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990) (quotation omitted). The Supreme Court has "described the 'zone of interests' test as denying a right of review 'if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 177-78 (2011) (quoting *Clarke v. Securities Indus. Assn.*, 479 U.S. 388, 399-400 (1987)). Thus, the class of "person[s] aggrieved" for purposes of a remedial statutory regime may be narrower than the class of persons who may have suffered a legal injury sufficient to show Article III standing to sue. *Id.* Because no plaintiff here has Article III standing to sue, it necessarily follows that no plaintiff may bring suit under the APA. Thus, all claims in this case should be dismissed for lack of subject matter jurisdiction because no plaintiff has established that he has standing.

**III.   Any claims against Agent Flynn should be dismissed for lack of personal jurisdiction.**

There is an additional reason that this Court should dismiss Agent Flynn as a defendant to this case: Hybertson's allegations regarding Agent Flynn's conduct do not suffice to show that this Court may exercise personal jurisdiction over Agent Flynn. *See Institutional Food Mktg. Assocs., Ltd. v. Golden State Strawberries, Inc.*, 747 F.2d 448, 453 (8th Cir. 1984) ("A plaintiff seeking to bring a defendant into court under a state long arm statute must state sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state."). It is Hybertson's burden to prove that personal jurisdiction over Agent Flynn exists, but he has not met that burden.

Before a court may exercise personal jurisdiction over a defendant, a plaintiff must show both 1) that the state long-arm statute authorizes personal jurisdiction over the defendant and 2) that the exercise of personal jurisdiction over the defendant meets the principles of due process. *Dakota Indus. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1388 (8th Cir. 1991); *accord Eagle Tech. v. Expander Ams., Inc.*, 783 F.3d 1131, 1136 (8th Cir. 2015) (if a state long-arm statute authorizes personal jurisdiction to the fullest extent of the due process clause, the latter analysis is the only one required); *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (same). *But see Myers v. Casino Queen, Inc.*, 689 F.3d 904, 909-10 (8th Cir. 2012) (holding that the two inquiries should be conducted separately under certain circumstances). Here, even if South Dakota's long-arm statute were to authorize personal jurisdiction over Agent Flynn, due process does not.

Due process requires that there be a "substantial connection" between the defendant and the forum state. *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 225-26 (8th Cir. 1987). "The due process clause forecloses personal jurisdiction unless the actions of the defendant himself

created a substantial connection with the forum State." *Dakota Indus.*, 946 F.2d at 1389 (quotation and alterations omitted). If the court finds that a defendant "purposefully established the requisite minimum contacts with the forum state the court still must determine whether the assertion of jurisdiction comports with fair play and substantial justice." *Id.* (quotation omitted). In the Eighth Circuit, "the 'minimum contacts' standard has devolved into a consideration of five factors: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Institutional Food Mktg. Assocs.*, 747 F.2d at 455. "[I]t is a defendant's contacts with the forum state that are of interest in determining whether personal jurisdiction exists, not its contacts with a resident of the forum." *Id.* at 456.

Here, upon the most generous reading of the complaint, Hybertson has pled that Agent Flynn, who works out of Denver, Colorado (Compl. ¶ 2.7), sent one letter addressed to Hybertson in South Dakota (Docket No. 3-3 at 8-9). This single letter is insufficient to create the necessary "minimum contacts" between Agent Flynn and South Dakota that due process would require before Agent Flynn could be subject to personal jurisdiction in this Court. *See generally Austad Co.*, 823 F.2d at 226-27 (8th Cir. 1987) (three-day visit by an attorney to South Dakota plus phone calls and mail exchanged between New York and South Dakota did not suffice to obtain personal jurisdiction in South Dakota over a non-resident law firm); *T.J. Raney & Sons, Inc. v. Security Sav. & Loan Ass'n.*, 749 F.2d 523, 525 (8th Cir. 1984) ("The district court properly concluded that the use of interstate mail, telephone or banking facilities, standing alone, was insufficient to satisfy the requirements of due process."); *Federal Deposit Ins. Corp. v. Malmo*, 939 F.2d 535, 537 (8th Cir. 1991) ("sporadic mail correspondence alone usually does not

constitute 'minimum contacts'" (quotation omitted)). The fact that Agent Flynn contacted Hybertson in South Dakota is "merely fortuitous" because it is the result of the fact that Hybertson purports to be a resident of South Dakota and not from any purposeful act of Agent Flynn directed towards South Dakota. *Brammer Eng'g, Inc. v. East Wright Mt. LTD P'ship*, 307 Fed. Appx. 845, 848 (5th Cir. 2009); *Williams v. United States*, Civ. No. 96-61, 1997 U.S. Dist. LEXIS 6779, at *28 (E.D. Ky. Apr. 29, 1997) ("Even assuming that Defendant [New York-based IRS agent] Kerzner . . . knew that some of [New York-based partnership] Madison's limited partners were residents of Kentucky, conducting the audit with that knowledge did not create a substantial connection with Kentucky such that the agent[] would reasonably anticipate being haled into court in Kentucky."). For this additional and independent reason, Agent Flynn should be dismissed from this case.

## IV.    Conclusion

Hybertson, along with every other purported plaintiff in this case, seeks an injunction against the continued efforts of the United States to assess and collect his federal taxes. Their arguments are frivolous and have been rejected by federal courts for decades. Neither Hybertson nor any other purported plaintiff has identified a federal statute providing this Court with subject matter jurisdiction; no plaintiff has identified a federal statute that waives the sovereign immunity of the United States; and no plaintiff has Article III standing to sue. Accordingly, this Court should dismiss Hybertson's complaint, and any other purported claim brought by any purported plaintiff in this case, for lack of subject matter jurisdiction. Further, any purported claim by Hybertson against Agent Flynn should be dismissed because Hybertson has failed to plead facts sufficient to show that this Court has personal jurisdiction over Agent Flynn.

Last, because all claims in this case are frivolous, neither Hybertson nor any other purported plaintiff should be granted leave to amend. A "party is not entitled to amend a complaint without making a showing that such an amendment would be able to save an otherwise meritless claim. A district court thus may deny a motion to amend a complaint when such an amendment would be futile." *Plymouth County v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014) (citation omitted).

Dated: August 6, 2015

Respectfully submitted,

CAROLINE D. CIRAOLO
Acting Assistant Attorney General
Tax Division

*/s/ Erin Healy Gallagher*
ERIN HEALY GALLAGHER
DC Bar No. 985670
U.S. Department of Justice, Tax Division
Post Office Box 7238
Washington, D.C. 20044
Telephone: (202) 353-2452
Fax: (202) 514-6770
E-mail: erin.healygallagher@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2015, a copy of foregoing DEFENDANTS' BRIEF IN

SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT was filed electronically

with the Court. The following persons, appearing *pro se*, were served by U.S. Mail, first-class,

postage pre-paid, on the same date at:

Robert Eugene Hybertson
8035 Blackhawk Road
Black Hawk , SD  57718

Christopher Rhodes Chapman
3080 Finsterwald Dr.
Titusville , FL  32780

Robert Orth
7207 Lafayette
Indianapolis , IN  46278

Richard Boggs
7001 St. Andrews Rd. #124
Columbia , SC  29212

John Howard Alexander
2435 East North Street Suite #105
Greenville, SC 29615

Mark Peters
15941 Durand Ave lot 45D
Union Grove, WI 53182

Leldon Oates
1027 South Pendleton Street #B301
2 Easley, SC 29642

Theodore Hammond
35 Congress Street
Pembroke, Massachusetts 02359

Robert E. Butler and Carrie J. Butler.
183 Dennis Ave.
Salinas CA, 93905

*/s/ Erin Healy Gallagher*
ERIN HEALY GALLAGHER
DC Bar No. 985670
U.S. Department of Justice, Tax Division
Post Office Box 7238
Washington, D.C. 20044
Telephone: (202) 353-2452
Fax: (202) 514-6770
E-mail: erin.healygallagher@usdoj.gov

*Attorney for Defendants*