UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| ROBERT EUGENE HYBERTSON, CHRISTOPHER RHODES CHAPMAN, ROBERT ORTH, RICHARD BOGGS, JOHN HOWARD ALEXANDER, MARK PETERS, LELDON OATES, THEODORE HAMMOND, ROBERT E. BUTLER, CARRIE J. BUTLER, JAMES DAVIS, LEE C. PRYMMER, JAMES A. LORING, RANDOLPH PHILLIP FRODSHAM, JOHN ADRIAN VAN ROSSEM, DIANE GRIFFITH, OTTO KROUPA, and TODD KEITH DUMAS,<br><br>    Plaintiffs *pro se*,<br><br> vs.<br><br>UNITED STATES, DEPARTMENT OF TREASURY, INTERNAL REVENUE SERVICE, and IRS C.I.D. AGENT GREG M. FLYNN,<br><br>    Defendants. | CIV. 15-5040-JLV<br><br>ORDER |

## INTRODUCTION

Before the court is a motion to dismiss made by defendants, United States, Department of Treasury, the Internal Revenue Service ("IRS") and IRS Criminal Investigation Agent Greg M. Flynn (collectively referred to as "the government"). (Docket 21). The government's motion to dismiss is made pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Id. The government separately asserts all claims against Agent Flynn must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Id. The government

argues plaintiffs should not be granted leave to amend their complaint because their claims are frivolous and any amendment would be futile. Id. Mr. Hybertson filed an opposition to the motion to dismiss and, if necessary, requests he be granted leave to amend the complaint. (Docket 25). The government filed a reply brief. (Docket 26).

**PROCEDURAL HISTORY**

Mr. Hybertson filed a *pro se* complaint on behalf of himself and four co-plaintiffs, Christopher Chapman, Robert Orth, Charles Sorensen and Timothy Taylor. (Docket 1 at p. 1 (case caption), pp. 4-5 (referencing these names as parties to the case)).[1] Only Mr. Hybertson signed the complaint. Id. at 20. At various times during the pendency of Mr. Hybertson's suit the above-captioned plaintiffs filed either "affirmation of co-plaintiff status" (Dockets 7 & 8) or "affidavit[s] of joinder." (Dockets 12, 13, 15, 16, 17, 20, 23, 24, 33, 35, 37, 38, 39 & 42). To date, neither Mr. Sorensen nor Mr. Taylor have sought to join in Mr. Hybertson's complaint.

With regard to Mr. Hybertson, the complaint alleges he received threatening correspondence from Agent Flynn alluding to a potential criminal prosecution and that Agent Flynn contacted an associate of Mr. Hybertson's and quizzed him about Mr. Hybertson's affairs. Id. at 4; see also Docket 3-3 at pp. 8-9 (Agent Flynn contacted Mr. Hybertson on potential criminal matters

---

[1]The court liberally construes *pro se* complaints. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

concerning Mr. Hybertson's alleged failure to file income tax returns and alleged failure to report income from his rig heater business.).

With regard to Mr. Chapman, the complaint alleges he appeared under subpoena before a grand jury convened by the government for violations of Title 26.  Id. at 4.  Mr. Chapman alleges he served the grand jury and Department of Justice counsel with a complaint to Congress which was filed on December 28, 2005, on matters pertaining to *in personam* jurisdiction.  Id.  The complaint asserts Mr. Chapman never received a response.  Id.

With regard to Mr. Orth, the complaint alleges he received correspondence from the IRS and the IRS did not consider all relevant statutes in reaching its conclusion that he owed money for taxes.  Id.  The complaint also alleges Mr. Orth was threatened with criminal charges.  Id.

With regard to Mr. Sorensen, the complaint alleges he is an employee with a large corporation and he risks losing his employment if he inquires about how his company's payroll department interprets and applies federal tax laws.  Id.

With regard to Mr. Taylor, the complaint alleges funds were taken from his bank account by the IRS without prior notice and without satisfaction of the necessary protocol.  Id. at 5.

Based on these factual allegations, plaintiffs make eight separate claims all seeking declaratory relief and all reaching the same end, namely that plaintiffs should not be taxed.  First, plaintiffs allege "Treasury Regulation 26 CFR [§] 1.1-1 [which imposes an income tax on every individual who is a

citizen or resident of the United States] is an undue addition to 26 USC § 1 and stands in violation of the 16th [Amendment] to the U.S. Constitution that authorizes only Congress to lay and collect taxes." Id. at 7. Second, plaintiffs allege the government does not properly apply 26 U.S.C. § 83(a) because the IRS does not consider a person to have a basis in their labor equivalent to the fair market value of the services rendered. Id. at 8-9. Third, plaintiffs allege the government's authority to assess taxes is an unlawful extension of their original statutory power, which was limited to stamp taxes. Id. at 9. Fourth, plaintiffs allege 26 U.S.C. Chapter 75, which deals with crimes, other tax offenses and forfeitures, see 26 U.S.C. §§ 7201-7344, does not apply to self-employed people. Id. at 10. Fifth, plaintiffs assert the IRS unlawfully seized the contents of Mr. Taylor's bank account.[2] Id. at 10-11. Sixth, plaintiffs claim the government's use of terms such as "sovereign citizens" and "tax protestor" disparages them and violates their due process rights. Id. at 11-12. Seventh, plaintiffs assert Title 26 is void for vagueness and that they:

> [D]o not believe . . . they have any of the least of duties provided for under 26 USC, that 26 USC imposes any taxes upon them or their compensation for personal [services] actually performed or their capital gains, that they have any duty to file income tax returns or that criminal sanctions in 26 USC apply to them.

Id. at 13 (emphasis in original).

---

[2]Mr. Taylor did not join in the complaint, and plaintiffs, appearing *pro se*, cannot raise a claim on behalf of Mr. Taylor. Plaintiffs' fifth claim is not properly before the court.

4

Eighth, plaintiffs claim they do not believe the tax code applies to them and, therefore, their actions cannot be characterized as "willful" for purposes of criminal offenses. Id. at 15.

Because Mr. Hybertson filed the complaint *pro se* and because of the large number of other *pro se* plaintiffs seeking to join the action, the court provided the plaintiffs with notice "that although each plaintiff is entitled to represent himself in this action, no plaintiff is permitted to prosecute the claims of another plaintiff." (Docket 18 at p. 4).

The government moved to dismiss the complaint pursuant to Rule 12(b)(1) as to all defendants and under Rule 12(b)(2) with regard to Agent Flynn only. (Docket 21). Mr. Hybertson filed an opposition to the motion. (Docket 25). Several of the plaintiffs filed a joinder to the opposition of the government's motion to dismiss. See Dockets 27, 28, 29, 30, 31, 32, 33, 34, 36, 38 & 42. The government filed a reply brief.[3] (Docket 26).

---

[3]The court notes John Alexander, Leldon Oates, Robert Butler, Carrie Butler and Lee Prymmer did not object to defendants' motion to dismiss. The government's motion is unopposed as to these plaintiffs. In addition to the court's substantive reasoning, see infra, the court grants defendants' motion to dismiss as to these plaintiffs because the motion is unopposed. The court further notes Craig Lyons joined in the objection to the government's motion to dismiss despite not seeking to join the suit as a plaintiff. (Docket 34). Because he is not party to the suit, he is not included in the case.

5

**ANALYSIS**

I.   **Rule 12(b)(1) Motion to Dismiss**

   1.   **Facial Challenge v. Factual Challenge**

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack.'" Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citing among other cases Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir.), cert. denied, 449 U.S. 953 (1980)).  In a facial attack, "the court restricts itself to the face of the pleadings . . . and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Id. (citations omitted) (further citations omitted).  "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." Menchaca, 613 F.2d at 511 (citing Mortensen v. First Federal Savings & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).[4]  "The general rule is that a complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Osborn, 918 F.2d at 729 n.6 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)) (internal quotation marks and further citations omitted).

---

[4]"In a factual attack, the court considers matters outside the pleadings . . . and the non-moving party does not have the benefit of 12(b)(6) safeguards." Osborn, 918 F.2d at 729 n.6 (8th Cir. 1990) (citations omitted).

The government's Rule 12(b)(1) motion to dismiss is a facial challenge to the court's subject matter jurisdiction. (Docket 22 at p. 9). The court restricts its analysis to the face of the pleadings and affords plaintiffs' complaint Rule 12(b)(6) protections in determining whether plaintiffs have sufficiently alleged a basis for the court's subject matter jurisdiction.

### 2. Subject Matter Jurisdiction

"Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and statutes enacted by Congress pursuant thereto." Winnebago Tribe of Nebraska v. Babbitt, 915 F. Supp. 157, 162 (D.S.D. 1996) (internal quotation marks omitted) (quoting Marine Equipment Management Co. v. United States, 4 F.3d 643, 646 (8th Cir. 1993)). "The threshold inquiry in every federal case is whether the court has jurisdiction[,] and the [United States Court of Appeals for the] Eighth Circuit has admonished district judges to be attentive to a satisfaction of jurisdictional requirements in all cases." Id. (internal quotation marks omitted) (quoting Rock Island Millwork Co. v. Hedges–Gough Lumber Co., 337 F.2d 24, 26-27 (8th Cir. 1964). "The burden of proving subject matter jurisdiction falls on the plaintiff." V S Ltd. P'ship v. Dep't of Hous. & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000) (citations omitted). The United States Supreme Court recognized that "since the jurisdiction of the court to hear the case may depend . . . upon the decision which it ultimately reaches on the merits, it is necessary that the

7

plaintiff set out in his complaint the statutory limitation on which he relies." Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 690 (1949).

Plaintiffs assert the court is vested with subject matter jurisdiction pursuant to 28 U.S.C. § 1331—commonly referred to as federal question jurisdiction, the Fourth and Fifth Amendments to the United States Constitution and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06. (Dockets 1 at p. 3; 25 at pp. 2-3). The government asserts plaintiffs have not identified a statute vesting the court with jurisdiction and the APA is not an independent grant of subject matter jurisdiction. (Docket 22 at p. 2). The government concludes it has not waived sovereign immunity, and therefore, the court is without subject matter jurisdiction to resolve plaintiffs' complaint. The government also asserts plaintiffs do not have Article III standing to bring the complaint.

### 3. Sovereign Immunity

"The waiver of sovereign immunity is a prerequisite to this Court's jurisdiction over the plaintiff's complaint." Winnebago Tribe, 915 F. Supp. at 163. "The basic rule of federal sovereign immunity is that the United States cannot be sued at all without consent of Congress." Id. (quoting Block v. North Dakota, 461 U.S. 273, 287 (1983)) (internal quotation marks omitted). Section 702 of the APA provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action

> in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. . . . Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702.

"[A]lthough 5 U.S.C. § 702 provides a general waiver of sovereign immunity, it does not confer jurisdiction if a more specific statute bars the requested relief." McCarty v. United States, 929 F.2d 1085, 1088 (5th Cir. 1991). At issue in plaintiffs' complaint is the application of the Anti-Injunction Act ("AIA"), 26 U.S.C. § 7421(a), and the tax exception clause of the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a). See McCarty, 929 F.2d at 1088.

The AIA provides that except for certain enumerated exceptions "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). The United States Supreme Court held:

> The [AIA] . . . could scarcely be more explicit—no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court . . . The Court has interpreted the principal purpose of this language to be the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference, and to require

9

> that the legal right to the disputed sums be determined in a suit for refund.

Bob Jones Univ. v. Simon, 416 U.S. 725, 736-37 (1974) (internal quotation marks and citations omitted); see also Judicial Watch, Inc. v. Rossotti, 317 F.3d 401, 405 (4th Cir. 2003) (describing "[t]he effect of the [AIA] [as] simple and obvious: courts lack jurisdiction to issue injunctive relief in suits seeking to restrain the assessment or collection of taxes[]") (citations omitted).

The Declaratory Judgment Act iterates "[i]n a case of actual controversy within its jurisdiction, *except with respect to Federal taxes* other than actions brought under section 7428 of the Internal Revenue Code of 1986, [or] a proceeding under section 505 or 1146 of title 11 . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). "By design, the DJA tax exception serves a critical but limited purpose. It strips courts of jurisdiction to circumvent the AIA by providing declaratory relief in cases 'restraining the assessment or collection of any tax.'" Cohen v. United States, 650 F.3d 717, 729 (D.C. Cir. 2011) (quoting 28 U.S.C. § 2201(a). "[T]he federal tax exception to the [DJA] is at least as broad as the prohibition of the [AIA]." Alexander v. Americans United Inc., 416 U.S. 752, 759 n.10 (1974); see also Z St., Inc. v. Koskinen, 44 F. Supp. 3d 48, 56 (D.D.C. 2014), appeal dismissed sub nom. Z St. v. Koskinen, No. 14-5188, 2014 WL 5128502 (D.C. Cir.

Sept. 18, 2014), and aff'd sub nom. Z St. v. Koskinen, 791 F.3d 24 (D.C. Cir. 2015) (same) (collecting cases).

The Eighth Circuit held the DJA, like the AIA, "forbids suits for the purpose of restraining the assessment or collection of any tax." Porter v. Fox, 99 F.3d 271, 274 (8th Cir. 1996) (citing Bob Jones Univ., 416 U.S. at 732 n.7). The Seventh Circuit concluded the AIA "forbids the maintenance of a suit brought for the purpose of 'restraining the assessment or collection of any tax.' . . . The Act bars groundless suits to defeat collection efforts, even those styled as objections to the IRS's assessment and collection methods rather than to the tax itself." Beck v. McKinney, 16 F. App'x 482, 483 (7th Cir. 2001) (unpublished) (quoting Harrell v. United States, 13 F.3d 232, 234-35 (7th Cir. 1993)). In Beck, the Seventh Circuit noted the plaintiff's "repeated assertions that he is a 'sovereign citizen' and 'not subject to tax'—arguments [it has] repeatedly rejected . . . reveal that the purpose of his suit is to challenge his tax liability. As such, his suit is barred by the [AIA]." Id. at 483-84 (citations omitted).

The Tenth Circuit reached the same conclusion. See Fostvedt v. United States, 978 F.2d 1201 (10th Cir. 1992). "[Section] 702 of the APA does not override the limitations of the [AIA] and the [DJA]." Id. at 1203-04. "It is clear that the [AIA] and the [DJA] are part of a specific statutory framework intended by Congress as limitations not negated by the APA." Id. at 1204 (citations omitted). "The legislative history of the 1976 amendment to § 702 specifically states that the revision is to have no [e]ffect on the limitations and prohibitions of

11

the Anti–Injunction and Declaratory Judgment Acts." Id. (citing H.R. Rep. No. 1656, 94th Cong., 2d Sess. 12, *reprinted in* 1976 U.S.C.C.A.N. 6121, 6132–33).

A narrow exception to the AIA exists. "Only upon proof of the presence of two factors could the literal terms of [the AIA] be avoided: first, irreparable injury, the essential prerequisite for injunctive relief in any case; and second, certainty of success on the merits." See Bob Jones Univ., 416 U.S. at 737 (citing Enochs v. Williams Packing & Nav. Co., 370 U.S. 1, 6-7 (1962)); see also Morris v. United States, 540 F. App'x 477, 481 (6th Cir. 2013) (unpublished) (same). With regard to the second factor the Supreme Court instructs "[a]n injunction could issue only if it is clear that under no circumstances could the Government ultimately prevail." Bob Jones Univ., 416 U.S. at 737 (internal quotation marks and citations omitted).

Plaintiffs assert "[t]he [APA] eliminates the defense of sovereign immunity in cases seeking relief other than money damages and claiming that a federal agency, officer, or other employee acted or failed to act in an official capacity or under color of legal authority." (Docket 25 at p. 3) (footnote omitted). Plaintiffs' argument fails to give effect to the entirety of § 702. A review of plaintiffs' claims reveals the gravamen of the complaint is plaintiffs' contentions that for various reasons they are either not required to pay federal taxes, comply with existing federal tax statutes and regulations, or that existing tax laws are unconstitutional. See Docket 1 at pp. 7-20. For example, plaintiffs assert:

12

> [They] do not believe for one moment that they have any of the least of duties provided for under 26 USC, that 26 USC imposes any taxes upon them or their compensation for personal [services] actually performed or their capital gains, that they have any duty to file income tax returns or that criminal sanctions in 26 USC apply to them.

Id. at p. 13 (emphasis in original).

Although not included in any specific claim, plaintiffs' complaint also contains factual allegations that Agent Flynn sent Mr. Hybertson threatening correspondence and quizzed associates of Mr. Hybertson. Id. at 4. Agent Flynn's letter to Mr. Hybertson states "[p]reliminary indications regarding your rig heater business and related activities shows substantial unreported income, hundreds of thousands of dollars, and other actions of concern to the IRS that may merit a recommendation of criminal prosecution to the Department of Justice Tax Division." (Docket 3-3 at p. 9). The letter outlines Mr. Flynn's prior interactions with Mr. Hybertson:

> [H]e sent [Mr. Hybertson] a letter, left [Mr. Hybertson] a voicemail and attempted to contact [Mr. Hybertson] in person at [Mr. Hybertson's] residence/office . . . . . [Agent Flynn] spoke with Craig Lyons in [Mr. Hybertson's driveway, and was informed that [Mr. Hybertson] was inside but would not come out to meet . . . or accept any papers from the IRS.

Id. at 8.

The AIA "is broadly interpreted, reaching to acts by the IRS and its agents that may culminate in the assessment or collection of taxes . . . ." Sterner v. U.S. Drug Enf't Agency, 467 F. Supp. 2d 1017, 1028 (S.D. Cal. 2006); see also Beck, 16 F. App'x at 483 (holding that plaintiff's complaint was barred by the AIA

13

despite plaintiff's allegations of the IRS directing "harassing forays" at plaintiff's business associates). Agent Flynn's correspondence with Mr. Hybertson was made in his official capacity as a criminal investigative agent with the IRS and was part of the IRS' function of assessing and collecting taxes owed by Mr. Hybertson.[5]

Plaintiffs request declaratory relief on matters ultimately aimed at restraining the government's ability to assess and collect taxes. The AIA and DJA expressly prohibit this. Plaintiffs' claims are barred under the DJA and AIA.[6] Plaintiffs failed to demonstrate their complaint qualifies as an exception to the AIA. Plaintiffs failed to find and prove an explicit waiver of the government's sovereign immunity. See Fostvedt, 978 F.2d at 1204. Section 702 of the APA, therefore, does not provide a basis for jurisdiction. Nor does plaintiffs' complaint find quarter in section 1331. See Smith v. U.S. Dep't of

---

[5]Even when the court presumes Agent Flynn is a proper party to the suit, sovereign immunity shields him from liability. "Sovereign immunity bars claims against federal officials in their official capacity unless a waiver is unequivocally expressed by Congress." Coleman v. Espy, 986 F.2d 1184, 1189 (8th Cir. 1993); see also Atkinson v. O'Neill, 867 F.2d 589, 590 (10th Cir. 1989) ("It is well settled that the United States and its employees, sued in their official capacities, are immune from suit, unless sovereign immunity has been waived.") (citing Kentucky v. Graham, 473 U.S. 159, 165–67 (1985)).

[6]The court "perceive[s] no need to refute [plaintiffs'] arguments with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit." Crain v. C.I.R., 737 F.2d 1417, 1417 (5th Cir. 1984) (per curiam); see also Wnuck v. C.I.R., 136 T.C. 498 (2011) (explaining "why it is usually *not* expedient to discuss and refute in detail the frivolous arguments that some litigants press in Tax Court[]") (emphasis in original).

Agric., 888 F. Supp. 2d 945, 953 (S.D. Iowa 2012) (Section 1331 "does not in itself waive the federal government's sovereign immunity."). "[A] plaintiff may rely on 28 U.S.C. § 1331 to establish subject matter jurisdiction only if there is another statutory provision waiving the federal government's sovereign immunity." Id. The court dismisses plaintiffs' complaint for lack of subject matter jurisdiction.[7]

### 4. Plaintiffs Do Not Have Article III Standing

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992) (citations omitted). "A plaintiff has standing when he suffers a concrete injury, or an 'injury in fact.'" Plymouth Cty., Iowa v. Merscorp, Inc., 774 F.3d 1155, 1158 (8th Cir. 2014) (quoting Urban Contractors Alliance of St. Louis v. Bi–State Dev. Agency, 531 F.2d 877, 881 (8th Cir. 1976)). "The test of constitutional standing has been variously expressed as real and immediate injury to the plaintiff, a distinct and palpable injury to himself, or injury in fact. . . . It is fundamental that the plaintiff himself must have suffered the injury he seeks to redress." Id. (internal quotation marks, brackets and citations omitted); see also Lujan, 504 U.S. at 560-61. The party invoking federal jurisdiction bears the burden of demonstrating its Article III standing. Lujan, 504 U.S. at 561.

---

[7]To the extent plaintiffs seek judicial review of their assessed or collected taxes, several specific avenues are available to them. See, e.g., Docket 22 at pp. 12-13 (outlining the potentially applicable statutory references).

Plaintiffs contend their claims and requests for declaratory relief have nothing to do with the DJA. (Docket 25 at p. 3). Even when the court assumes this to be true, plaintiffs fail to satisfy Article III's case-or-controversy requirement. E.g., Worsham v. U.S. Dep't of the Treasury, No. CIV.A. ELH-12-2635, 2013 WL 5274358, at *8 (D. Md. Sept. 17, 2013). While plaintiffs make many claims generally asserting they are not subject to federal tax laws, arguing various tax statutes and regulations are unconstitutional, and otherwise identifying wrongful acts of the government, plaintiffs fail to establish that any particular plaintiff actually suffered an "injury in fact" sufficient to give rise to Article III standing. See Plymouth, 774 F.3d at 1158.

Mr. Hybertson's allegations regarding Agent Flynn's actions fair no better. See Dockets 1 at p. 4 & 3-3 at pp. 8-9; supra pp. 13-14. A fellow district court determined "phone calls, letters, meetings, seizures and levies. . . . without any allegations that they were done outside the scope of usual procedure, are perfectly valid activities of IRS officials involved in the performance of their official duties." Blair v. U.S. Treasury Dep't, 596 F. Supp. 273, 281 (N.D. Ind. 1984) (internal quotation marks omitted). The court reasoned:

> Nothing in the complaint indicates that these activities were done in any way other than in strict compliance with the Code and IRS regulations. Despite the notice pleading requirements of the Federal Rules of Civil Procedure, and the liberal pleading requirements for *pro se* litigants . . . [the] complaint simply fails to state a set of facts which would entitle the plaintiffs to relief. This court will not fancifully speculate on what defendants may or may not have done; if the plaintiffs cannot specify the defendants'

16

wrongful conduct, then the court will not take cognizance of their claims.

Id. at 281.

Mr. Hybertson, like the plaintiff in Blair, failed to provide any basis of malfeasance on behalf of Agent Flynn. Mr. Hybertson's own pleading demonstrates the opposite. See Docket 3-3 at pp. 8-9. It is Agent Flynn's job to investigate potential criminal violations of the tax code for the IRS. Plaintiffs failed to carry their burden of establishing Article III standing for their suit. In sum, if the DJA and AIA apply, plaintiffs' complaint must be dismissed because the government has not waived sovereign immunity, and if, as plaintiffs contend, they do not seek to restrain the assessment or collection of any tax, they have failed to establish Article III standing for the suit. Under either analysis, the claims are dismissed.

Because the government has not waived sovereign immunity and no plaintiff has established Article III standing, the court need not address the government's Rule 12(b)(2) motion to dismiss plaintiffs' complaint as to Agent Flynn for lack of personal jurisdiction.

### 5. Any Amendment to the Complaint Would Be Futile

"Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint should be freely given in order to promote justice." Plymouth, 774 F.3d at 1160 (citing Ferguson v. Cape Girardeau Cnty., 88 F.3d 647, 650 (8th Cir. 1996)). However, "a party is not entitled to amend a complaint without making a showing that such an amendment would be able to save an otherwise meritless claim."

Id. (citing <u>Wisdom v. First Midwest Bank</u>, 167 F.3d 402, 409 (8th Cir. 1999)). "A district court thus may deny a motion to amend a complaint when such an amendment would be futile." <u>Id.</u> (citations omitted).

The government requests plaintiffs not be given leave to amend the complaint. (Docket 22 at p. 21). Plaintiffs request they be granted leave to amend the complaint should the court find it defective. (Docket 25 at p. 12). Plaintiffs' response to the government's motion to dismiss failed to make any showing that an amendment would save the complaint from dismissal. Plaintiffs' claims are based on frivolous tax protestor theories that courts have long rejected, and as was demonstrated above, under either a sovereign immunity or Article III standing analysis, the complaint must be dismissed. The court finds any amendment to the complaint would be futile and will not grant plaintiffs leave to amend.

## ORDER

Based on the above analysis, it is

ORDERED that the government's motion to dismiss (Docket 21) is granted.

IT IS FURTHER ORDERED that plaintiffs' complaint (Docket 1) is dismissed with prejudice and without leave to amend.

Dated March 24, 2016.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE